# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | : |
| | : |
| KENT E. MOSHER and CATHY MOSHER, his wife, | : C.A. No.: 1:18-cv-00410-LPS-SRF |
| | : |
|    Plaintiffs | : |
| | : |
| v. | : |
| | : |
| ABB, INC., ET AL.; | : TRIAL BY JURY DEMANDED |
| | : |
|    Defendants. | : |

## REPLY BRIEF IN SUPPORT OF DEFENDANT AIR & LIQUID SYSTEMS CORPORATION, AS SUCCESSOR BY MERGER TO BUFFALO PUMPS, INC.'S MOTION FOR SUMMARY JUDGMENT

**WILBRAHAM, LAWLER & BUBA**

By: */s/ Timothy A. Sullivan III, Esquire*
Timothy A. Sullivan III, Esquire (I.D. No. 4813)
txs@wlbdeflaw.com
James J. Horning, Jr. Esquire (I.D. No. 5301)
jjh@wlbdeflaw.com
919 N. Market Street, Suite 980
Wilmington, DE 19801
(302) 421-9935
*Attorneys for Defendant,*
*Air & Liquid Systems Corporation,*
*as successor by merger to Buffalo Pumps, Inc.*

Dated: September 4, 2019

# **TABLE OF CONTENTS**

INTRODUCTION……...…………………………………………………….……………….....1

ARGUMENT......................................................................................................................................4

   a.   Plaintiffs' Attempt to Re-Write Mr. Mosher's Limited Buffalo Pump Testimony with General Pump Testimony........................................................................................................ 4

   b.   Plaintiffs' Improper Extrapolation of Buffalo's Prior Discovery Responses ...................... 5

   c.   Plaintiffs' Unauthenticated Buffalo Documents Are Irrelevant ……………………..…….6

   d.   Plaintiffs' Improper Attempt to Shift the Burden of Proof.................................................. 9

   e.   Plaintiffs' Reliance Upon *DeVries* is Misplaced. ............................................................. 10

   f.   Plaintiffs' References to Buffalo's Use of Asbestos in Component Parts is Insufficient Proof of Willful and Wanton Conduct………………………………………………………12

CONCLUSION…………………………………………………………………………………..13

# **TABLE OF AUTHORITIES**

**Cases** <u>Page</u>

*Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986 (2019)……………………………….3, 10-12

*Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455 (E.D. Pa. 2011) ................................................ 9

*Delatte v. A.W. Chesterton*, No. 2:09-69578 (E.D. Pa. Feb. 28, 2011) (Order) ............................ 9

*In re: Asbestos Litig. (Harding)*, D. Del. Civ. No. 17-251-MN-SRF (D. Del. Jan. 22, 2019) (citing *Rutan v. Wayne Combustion Sys.*, 2011 WL 7049490, at *2 (Conn. Super. Ct. Dec. 28, 2011) (emphasis omitted))……………………………………...…………….……………………9-10

*Rogers v. Air & Liquid Systems, Corp.*, et al., No. 17-1570-MN-SRF Order p. 9-10 (D. Del. May 15, 2019)…………………………………………………………………………………...…..10

*Thurmon v. Ga. Pac., LLC,* 2012 U.S. Dist. LEXIS 150895…………………….………………..6

**INTRODUCTION**

Defendant Air & Liquid Systems Corporation as successor by merger to Buffalo Pumps, Inc. ("Buffalo") respectfully submits this Reply to Plaintiffs' Answering Brief in Opposition to Buffalo's Motion for Summary Judgment.

Buffalo filed this Motion based on Plaintiffs' failure to provide evidence that Mr. Mosher was exposed to asbestos-containing products for which Buffalo is liable. In fact, Mr. Mosher limited his activity with the single Buffalo fire pump at issue to simply turning its electric motor on and off, which did not require opening the pump at all. He never saw anyone else perform work on the Buffalo pump. Thus, at no time during his testimony did he identify any products Buffalo may be liable for as a source of his alleged asbestos exposure.

In opposition, Plaintiffs rely upon speculative arguments, citations to general pump testimony in an attempt to expand Mr. Mosher's limited Buffalo pump testimony, and improper extrapolations of documents that are both temporally and substantively irrelevant. In fact, Plaintiffs' Answering Brief inescapably acknowledges that these documents pertain to entirely <u>different</u> types of Buffalo pumps than the single fire pump Mr. Mosher identified. Regardless, Plaintiffs persist in attempting to muddy the clear evidentiary record with these documents in hope of manufacturing apparent factual issues of asbestos exposure where none exist.

Plaintiffs acknowledge that the Buffalo product at issue is a single fire pump Mr. Mosher identified on the *USS Truett* where he served in the U.S. Navy from 1974 to 1977 as a Boiler Technician.[1] Plaintiffs claim Mr. Mosher boarded the *Truett* as early as 1973, but Plaintiffs' cited testimony for that statement clearly states that is the date he entered the Navy and he did not board

---

[1] Plaintiffs' Opp. pp. 1-2, fn. 1.

1

the Truett until 1974.[2] Regardless, this is not a material fact in the case given Mr. Mosher's very limited interaction with or around the single Buffalo fire pump.

     Critically, Plaintiffs cite to Mr. Mosher's testimony specific to the Buffalo fire pump at issue purposes of establishing mere <u>identification</u> of the Buffalo pump aboard the *Truett*, but fail to address Buffalo's Opening Brief Statement of Facts detailing Mr. Mosher's subsequent admissions in that same testimony that he "can't remember" if the Buffalo pump used mechanical seals or packing as a sealant material and "I don't remember much about the fire pump."[3] Plaintiffs also ignore Mr. Mosher's admissions cited in Buffalo's Opening Brief that, he did <u>not</u> repack the Buffalo fire pump[4] and, in fact, he limited his activity with the Buffalo pump to simply turning its electric motor on and off, which did not requiring opening the pump at all.[5] Finally, Mr. Mosher never saw anyone else perform work on the Buffalo pump.[6] Hence, Plaintiffs' evasion of Mr. Mosher's complete Buffalo fire pump testimony serves as a tacit admission that the testimony arguably serves to establish <u>mere product identification</u>, but fails to establish a basis for <u>exposure</u> and <u>causation</u>.

     Because Mr. Mosher testified to very limited interaction with the Buffalo fire pump at issue so unambiguously, Plaintiffs' Answering Brief completely ignores that testimony and, instead, pivots to making speculative arguments supported by citations to Mr. Mosher's <u>general</u> testimony about maintenance of pumps manufactured by 5 different companies, which was comprised of preventative pump maintenance including 60-70 separate tasks such as changing the zincs on the

---

[2] *Id.*
[3] Buffalo's Opening Br. Ex. B, p. 244:1-11.
[4] *Id.* p. 244:12-17.
[5] *Id.* p. 244:18-19; 244:22-245:1; 245:5-9.
[6] *Id.* p. 244:20-21.

cooling system, checking the oil, and refurbishing the oil.[7] This general testimony was provided in response to Plaintiffs' own attorney's questions during the trial video testimony that preceded his Buffalo-pump specific cross-examination during the subsequent defense discovery deposition. Thus, Plaintiffs' Answering Brief inappropriately relies upon their attempt to re-write Mr. Mosher's limited Buffalo fire pump testimony with his general pump testimony associated with unrelated pump manufacturers.

Notwithstanding Mr. Mosher's testimony limiting the extent of work allegedly performed on the Buffalo fire pump by him or in his presence, Plaintiffs proceed to take the Court on a circuitous route of speculative arguments supported by irrelevant documents and his general pump testimony. When Mr. Mosher's testimony specific to Buffalo and general pump testimony is read as a whole, there remain no issues of fact for a jury to decide, nor is there a basis for a reasonable jury to find in Plaintiffs' favor against Buffalo.

Plaintiffs' *DeVries* arguments put the cart before the horse and lack a critical factual prerequisite in applying *DeVries*—Mr. Mosher's exposure to asbestos-containing materials removed from or installed in the Buffalo pumps at issue. Here, Mr. Mosher's admission that his only interaction with the Buffalo fire pump consisted of turning the motor on and off (that did not require opening the pump) establishes the irrelevancy of Plaintiffs' citations to testimony about gaskets, packing, and insulation that <u>may</u> have been the source of asbestos exposure from any of the other 4 brands of pumps identified as maintained on the *Truett*. As a result, Plaintiffs' opposition confirms that, on the record evidence, summary judgment in favor of Buffalo is warranted.

---

[7] Buffalo's Opening Br. Ex. Ex. B p. 148:22-149:15; Buffalo's Opening Br. Ex. A, p. 20:19-22.

Plaintiffs have not identified asbestos-containing products Mr. Mosher was exposed to for which Buffalo may be liable, nor have they established Buffalo's liability for such asbestos-containing component parts manufactured by and supplied by other companies. Finally, because Plaintiffs have not established this *prima facie* case of asbestos exposure, Plaintiffs have not (and cannot) establish how the evidence of record supports an issue of material fact as to the Maritime law "substantial causation" standard. As a result, they cannot meet their burden to support a contention that any alleged exposure from an asbestos-containing product for which Buffalo is liable was a substantial contributing factor in causing his alleged mesothelioma.

Accordingly, summary judgment in favor of Buffalo is warranted.

## ARGUMENT

**a. Plaintiffs' Attempt to Re-Write Mr. Mosher's Limited Buffalo Pump Testimony with General Pump Testimony**

Plaintiffs' opposition Statement of Facts evades key testimony cited in Buffalo's Opening Brief that establishes the following as undisputed facts as to the single Buffalo fire pump at issue for purposes of this motion:

- Mr. Mosher testified that the Buffalo fire pump supplied seawater for the fire suppression system aboard the *Truett* and there was no reason to heat the water.[8]

- He "can't remember" if the Buffalo pump used mechanical seals or packing as a sealant material and admitted, "I don't remember much about the fire pump."[9]

- He testified that he did <u>not</u> repack the Buffalo fire pump.[10]

---

[8] Buffalo's Opening Br. Ex. B, p. 243:7-25.
[9] *Id.* p. 244:1-11.
[10] *Id.* p. 244:12-17.

- He limited his activity with the Buffalo pump to simply turning its electric motor on and off, which did not require opening the pump at all.[11]

- He never saw anyone else perform work on the Buffalo fire pump.[12]

- He admits he has no training in the identification of asbestos-containing products.[13]

Plaintiffs' opposition ignores these undisputed facts and attempts to build a *prima facie* case with citations to Mr. Mosher's general pump testimony (*supra.*) regarding gaskets, packing, and insulation associated with a multitude of preventive maintenance tasks encompassing 5 pump manufacturer brands. However, Mr. Mosher unambiguously limited his activity with the Buffalo pump to simply turning its electric motor on and off and he never saw anyone else perform work on the Buffalo fire pump.

Thus, there is no issue of fact as to work performed on the Buffalo fire pump by Mr. Mosher or in his presence that utilized any asbestos-containing replacement component parts in any discernible frequency and regularity as required by Maritime law. Because the record in this case fails to support any potential attribution of liability to Buffalo, Buffalo is entitled to summary judgment in its favor.

### b. Plaintiffs' Improper Extrapolation of Buffalo's Prior Discovery Responses

Plaintiffs cite to Buffalo's 2005 responses to New York master asbestos discovery as support for the generalization that Buffalo sold asbestos-containing pumps from 1955 to 1985.[14] However, Plaintiffs misstate these limited statements to appear as Buffalo's admission that *all* Buffalo pumps sold during that time contained asbestos.

---

[11] *Id.* p. 244:18-19; 244:22-245:1; 245:5-9.
[12] *Id.* p. 244:20-21.
[13] *Id.* p. 18:19-23.
[14] *See* Plaintiff's Opp. p. 3 citing Plaintiffs' Opp. Ex. C.

In fact, the response cited by Plaintiffs states that *some* Buffalo pumps were supplied at the time of their *original delivery* with packing or gaskets, and that during *some* periods of time *some* of the packing or gaskets contained asbestos.[15] Plaintiffs offer nothing in this case to establish that the single Buffalo fire pumps Mr. Mosher identified was originally supplied with gaskets or packing and, if it was, if it contained asbestos. Regardless, there is no evidence of record that Mr. Mosher encountered gaskets or packing originally supplied with the Buffalo fire pump at issue. In fact, Mr. Mosher's testimony specific to the Buffalo fire pump did not involve packing or gasket removal anyway—simply turning the motor on and off. Plaintiffs cannot meet their burden by simply showing a Buffalo pump *might* have contained asbestos.[16] The critical exposure element to asbestos in the pump is clearly lacking here.

### c. Plaintiffs' Unauthenticated Buffalo Documents Are Irrelevant

Plaintiffs' sub-heading on p. 3 indicates they will present evidence of Buffalo's asbestos containing products and their presence aboard the *Truett*; however, the series of documents Plaintiffs rely upon are completely irrelevant and offer nothing regarding asbestos allegedly associated with the Buffalo fire pump and ship at issue.

Plaintiffs cite to unauthenticated correspondence between the Department of the Navy and Buffalo for the apparent purpose of showing that Buffalo did supply fire pumps to the Navy with replacement parts.[17] Again, the mere presence of a Buffalo fire pump on the *Truett* is arguably established in Mr. Mosher's cross-examination and does not establish requisite exposure. The

---

[15] Plaintiffs' Opp. Ex. C, response No. 6.
[16] *See Thurmon v. Ga. Pac., LLC*, 2012 U.S. Dist. LEXIS 150895 (Defendant CBS, as successor to Westinghouse, granted summary judgment where there was record evidence that it manufactured asbestos and non-asbestos products at the same time and plaintiff failed to present any evidence that he worked with the asbestos-containing versions).
[17] Plaintiffs' Opp. p. 4 citing Plaintiffs' Opp. Ex. D.

cited letter is otherwise useless for establishing Plaintiffs' *prima facie* case. That is because the letter discusses shipment of monel <u>bare metal</u> impeller lock nuts to replace <u>brass</u> nuts that were being attacked by sea water erosion of the metal. There is no indication in the letter that Buffalo supplied <u>asbestos-containing</u> replacement parts for the fire pumps on the *Truett* at issue. If anything, this letter is helpful to Buffalo's defense because it corroborates Mr. Mosher's testimony that <u>ambient temperature sea water</u> flowed through the fire pump on the *Truett* and there was <u>no reason to heat the pump</u>. Lastly, this document is irrelevant because the letter is dated July 30, 1943 (30 years before Mr. Mosher enlisted in the Navy) and references US destroyer DD445 class ships. The *Truett* was an entirely different type of ship classification—destroyer (DE-1096) escort and later a fast frigate (FF-1095).[18]

Plaintiffs next cite to unauthenticated, purported excerpts from a Buffalo distiller pump equipment manual while also acknowledging that the distiller pump is an entirely irrelevant, <u>different type of pump</u> than the fire pump at issue on the *Truett*.[19] This document is dated November 1968 (5 years before Mr. Mosher enlisted in the Navy). The distiller pump manual references to removal of component parts are a moot point in light of Mr. Mosher's admission that he never had to open the Buffalo fire pump on the *Truett*, nor saw anyone else work on the pump.

Plaintiffs follow with citation to unauthenticated, purported excerpts from a Buffalo Centrifugal Pump Application Manual.[20] Again, Plaintiffs acknowledge that this document references an entirely irrelevant, <u>different type of pump</u> than the fire pump at issue on the *Truett*.[21] This document is dated 1959 (14 years prior to Mr. Mosher's enlistment in the Navy).

---

[18] Discovery Deposition of Kent Mosher, p. 81:8-11 (Ex. R-1).
[19] Plaintiffs' Opp. p. 4 citing to Plaintiffs' Opp. Ex. E.
[20] Plaintiffs' Opp. p. 5 citing Plaintiffs' Opp. Ex. F.
[21] *Id*.

Furthermore, Plaintiffs primarily rely upon this document for its references to packing material—despite Mr. Mosher's testimony that he "can't remember" if the Buffalo fire pump on the *Truett* used mechanical seals or packing as a sealant material[22] and his admission that he did <u>not</u> repack that Buffalo fire pump.[23] Thus, this document is also completely irrelevant to this case.

Lastly, Plaintiffs inexplicably cite to two (2) unauthenticated, irrelevant documents. The first was published by the U.S. Naval Institute in 1941—<u>11 years before Mr. Mosher was born</u>.[24] Plaintiffs claim this document "furthers the notion that the pumps contained in the boilers on Navy ships had asbestos in them."[25] This document is completely irrelevant in light of Mr. Mosher's unambiguous testimony that he simply turned the pump motor on and off, never opened the Buffalo fire pump at issue, and never saw anyone else work on it. Additionally, Mr. Mosher never testified that the Buffalo fire pump was "contained in the boiler" on the *Truett*. Lastly, general attempts to "further[] the notion" of asbestos content of unrelated Naval pumps in 1941 do not rise to the level of requisite evidence of sufficient "frequency, proximity, and regularity" of exposure to support a conclusion that the Buffalo fire pump identified on the *Truett* was a "substantial factor" in bringing about Mr. Mosher's alleged injuries, as required under Maritime law.

Plaintiffs close their specious product identification argument in citing to an irrelevant, unauthenticated, purported Bureau of Ships Manual.[26] Plaintiffs acknowledge that this document is also <u>not </u>published by Buffalo, but the United States Navy Department instead. The document is dated 1954—when Mr. Mosher was 2 years old.[27] Plaintiffs ineffectively proffer this document

---

[22] Buffalo's Opening Br. Ex. B p. 244:1-11.
[23] *Id.* p. 244:12-17.
[24] Discovery Deposition of Kent Mosher, p. 17:7-9 (Ex. R-1).
[25] Plaintiffs' Opp. p. 6 citing to Plaintiffs' Opp. Ex. G.
[26] Plaintiffs' Opp. p. 6 citing to Plaintiffs' Opp. Ex. H.
[27] Discovery Deposition of Kent Mosher, p. 17:7-9 (Ex. R-1).

for purposes of establishing his exposure to asbestos-containing flange gaskets. First, Mr. Mosher's testimony specific to the identified Buffalo fire pump is limited to turning the motor on and off. Second, he testified that there was no reason to heat the seawater that flowed through the fire pump. Setting aside the temporal and product-specific irrelevance of Plaintiffs' Ex. H, this document states that <u>rubber</u> material was used for cold water pump gaskets and only the <u>steam</u> end and <u>hot</u> water pumps utilized asbestos packing for certain bonnet gaskets. Hence, this Bureau of Ships Manual, combined with Plaintiffs' testimony, suggests that any gaskets in the fire pump were <u>rubber</u> and <u>not asbestos</u>.

In sum, none of the documents proffered by Plaintiffs pertain to the Buffalo fire pump at issue, the *Truett* ship at issue, the timeframe Mr. Mosher served on the *Truett*, or any sources of asbestos exposure consistent with Mr. Mosher's testimony regarding the single Buffalo fire pump he identified. Judge Robreno addressed similar evidence, despite supporting deposition testimony, in several opinions granting Buffalo's motions for summary judgment, rejecting plaintiffs' attempted reliance on documents, discovery responses, and testimony that fail to show the actual alleged asbestos-containing products at issue were manufactured or supplied by Buffalo.[28] Similarly, Plaintiffs' attempted roundabout route in this case to establish nexus of asbestos-containing products for which Buffalo may liable through use of unauthenticated documents lacks the requisite proof to support a *prima facie* case against Buffalo.

Here, Plaintiff's undisputed admissions in this case are that he only turned the Buffalo fire pump motor on and off, he did not open the pump, and never observed anyone else working on the pump. No reasonable jury could find in Plaintiffs' favor on such a limited record.

### d. Plaintiffs' Improper Attempt to Shift the Burden of Proof

---

[28] *See Delatte v. A.W. Chesterton*, No. 2:09-69578 (E.D. Pa. Feb. 28, 2011) (Order) (Buffalo's Opening Brief Ex. B); *see also Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455 (E.D. Pa. 2011).

Plaintiffs claim they do not have the burden at the summary judgment stage to provide evidence of asbestos in Buffalo's products.[29] Given the complete lack of evidence of exposure to any product Buffalo may be liable for, this is a moot point. Regardless, Plaintiffs' reliance upon *In re: Asbestos Litig. (Harding)* to support the burden shift they suggest is completely misplaced. As is clear from Plaintiffs' citation and the Connecticut opinion cited to, the *Harding* passage they refer to specifically relied upon <u>Connecticut</u> statutory interpretation and Connecticut case law. <u>Maritime</u> law applies to Plaintiffs' claims in this case against Buffalo and Plaintiffs offer no comparable Maritime legal authority to support this burden-shifting argument in the Maritime context.[30] Additionally, this Honorable Court in *Harding* denied that summary judgment motion at issue because the Defendant did not file a reply to Plaintiffs' opposition.[31] As a result, the Court concluded that unresolved issues of fact remained.[32]

In this case, it is obvious that Plaintiffs' attempts to shift the burden driven by their lack of requisite evidence to establish that Mr. Mosher was exposed to any asbestos-containing products for which Buffalo may be liable.

### e. Plaintiffs' Reliance Upon *DeVries* is Misplaced

Buffalo's Opening Brief addressed that this Court has held that the bare metal defense analysis at issue in *DeVries* is not at issue in a factual scenario such as that presented in this case because the Maritime Defendant (Buffalo) is "challenging at the outset the plaintiff's ability to identify defendants' products and show substantial factor causation under *Lindstrom*, i.e. lack of

---

[29] Plaintiffs' Opp. p. 8 citing *In re: Asbestos Litig. (Harding)*, D. Del. Civ. No. 17-251-MN-SRF (D. Del. Jan. 22, 2019) (citing *Rutan v. Wayne Combustion Sys.*, 2011 WL 7049490, at *2 (Conn. Super. Ct. Dec. 28, 2011) (emphasis omitted)).
[30] D.I. 102.
[31] *Harding* at *16-17.
[32] *Harding* at *16-17.

10

sufficient product exposure and no nexus as to causation of injuries." [33] Plaintiffs' Answering Brief acknowledges Buffalo's citation to this point in *Rogers*, but Plaintiffs miss the main point of *Rogers*. Plaintiffs view *Rogers* as addressing a product <u>identification</u> deficiency when, in fact, the crux of *Rogers* is that Plaintiffs must establish a *prima facie* of substantial factor causation under *Lindstrom* that includes sufficient product <u>exposure</u> and <u>causation</u> of injuries before the bare metal defense analysis at issue in *DeVries* is at issue.

Instead, Plaintiffs argue that their proofs in this case are distinguishable from Rogers in that Mr. Mosher identified the Buffalo fire pump in better detail than Mr. Rogers, including the manufacturer name, and how the pump functioned.[34] This Buffalo-specific testimony is all related to superficial bare metal <u>product identification</u> and does nothing to satisfy the *Lindstrom* standard requiring sufficient <u>product exposure</u> and <u>causation of injuries</u>. That is because Plaintiffs have no Buffalo-specific testimony in this case to satisfy *Lindstrom*. Mr. Mosher testified that he never opened the Buffalo fire pump, never re-packed it, and never saw anyone else work on it—he simply turned the motor on and off.

Plaintiffs then alternatively attempt to satisfy the complete lack of asbestos-containing product identification, sufficient exposure, and causation by citing to a report from their hired medical doctor, Ginsburg.[35] However, Dr. Ginsburg's report is much more generalized than the summation provided by Plaintiffs' in their Answering Brief. Dr. Ginsburg simply opines that each product for which asbestos exposure can be shown was a cause of Mr. Mosher's mesothelioma and that these cumulative exposures were a substantial contributing factor in the development of

---

[33] *Rogers v. Air & Liquid Systems, Corp.*, et al., No. 17-1570-MN-SRF Order p. 9-10 (D. Del. May 15, 2019) (Buffalo's Opening Br. Ex. F).
[34] Plaintiffs' Opp. p. 12.
[35] Plaintiffs' Opp. p. 12 citing to Plaintiffs' Opp. Ex. K.

11

Mr. Mosher's mesothelioma.[36] However, Dr. Ginsburg never defines through his expertise what each "product for which asbestos exposure can be shown" is. Instead, he simply provides a narrative summary of Mr. Mosher's trial video testimony taken by his attorney in response to many leading questions.[37] Nothing in Dr. Ginsburg's narrative summary mentions Buffalo pumps or that simply turning the motor of the Buffalo fire pump at issue on and off was a potential source of asbestos exposure.

Thus, Dr. Ginsburg's causation opinion fails to demonstrate sufficient "frequency, proximity, and regularity" to support a conclusion that Mr. Mosher's limited interaction with the Buffalo fire pump was a "substantial factor" in bringing about his alleged injuries, as required under Maritime law. As a result of Plaintiffs' failure to identify Buffalo's products and show substantial factor causation under *Lindstrom*, i.e. lack of sufficient product exposure and no nexus as to causation of injuries, the bare metal defense analysis at issue in *DeVries* is not at issue in this case.

### e. Plaintiffs' References to Buffalo's Use of Asbestos in Component Parts is Insufficient Proof of Willful and Wanton Conduct

In a case such as this where there is no evidence that Mr. Mosher was exposed to asbestos for which Buffalo is liable at all, nor with the requisite sufficiency to satisfy *Lindstrom*, Plaintiffs have no basis of exposure upon which to rest a willful and wanton conduct claim. Plaintiffs' only proffered evidence of Buffalo's willful and wanton conduct with regards to Mr. Mosher consists of unauthenticated documentation regarding how Buffalo addressed the use of asbestos-containing component parts obtained from their component part manufacturers in the mid-1980s.; however, Mr. Mosher was discharged from the Navy and ceased working on or around the Buffalo fire pump

---

[36] Plaintiffs' Opp. Ex. K p. 8-9.
[37] *Id*. p. 4-5.

at issue in 1977.[38] Plaintiffs suggest that these documents establish "many manufacturers" had ceased using asbestos-containing component parts by this time, but Plaintiffs' argument fails to note that Buffalo was <u>not</u> the manufacturer of the component parts at issue, as noted in Plaintiffs' exhibit. Instead, Buffalo acted as an intermediary in this transaction and could only transition to non-asbestos component parts when the component part manufacturers had suitable alternatives. Further, Plaintiffs offer no proof that the component parts addressed in their Exhibit J are 1) at issue in this case and 2) asbestos-containing products to which Mr. Mosher was actually exposed. Finally, Plaintiffs' Exhibit J actually shows Buffalo's diligence in transitioning from asbestos-containing component parts and that the transition was delayed awaiting U.S. Navy consent—for which Buffalo contacted the Navy multiple times.

Plaintiffs' Answering Brief Ex. I addresses studies regarding the dangers of asbestos-containing insulation products used by heavily exposed pipe coverers, asbestos workers, and insulators.[39] Nothing in Mr. Mosher's Buffalo pump-specific testimony suggests exposure akin to that at issue in thermal insulation products addressed in Plaintiff's Ex. I. Hence, this exhibit is irrelevant to this case and fails to instead address the dangers of encapsulated asbestos fibers contained in packing and gaskets purportedly addressed by Buffalo in Plaintiffs' Exhibit J.

Thus, nothing in these documents is temporally relevant to the time Mr. Mosher served on the *Truett* where the Buffalo pump was located. More importantly, nothing in Exhibit J shows malicious, wanton, reckless, or gross negligent actions by Buffalo that caused Mr. Mosher's injury.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[38] Plaintiffs' Opp. Ex. J.
[39] Plaintiffs' Opp. Ex. I p. 2.

## CONCLUSION

A jury would be required to impermissibly speculate that Mr. Mosher was exposed to asbestos from a Buffalo pump and that exposure was a substantial factor in causing his injury. For the foregoing reasons, and those set forth in its original motion papers, Buffalo requests that the Court enter summary judgment in its favor as to each and every of Plaintiffs' claims and grant any and all other relief as the Court deems just and proper.

                              Respectfully submitted,

                              **WILBRAHAM, LAWLER & BUBA**

By:    */s/ Timothy A. Sullivan III, Esquire*
         Timothy A. Sullivan III, Esquire (I.D. No. 4813)
         txs@wlbdeflaw.com
         James J. Horning, Esquire (I.D. No. 5301)
         jjh@wlbdeflaw.com
         919 N. Market Street, Suite 980
         Wilmington, DE 19801
         (302) 421-9935
         *Attorneys for Defendant*
         *Air & Liquid Systems Corporation,*
         *as successor by merger to Buffalo Pumps, Inc.*

Dated: September 4, 2019