# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| KENT E. MOSHER and ) | |
| CATHY MOSHER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 18-410-LPS-SRF |
| v. ) | |
| ) | |
| ABB, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION**

### **I. INTRODUCTION**

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of ABB, Inc. ("ABB")[1] (D.I. 120), Aurora Pump Company ("Aurora Pump") (D.I. 106), Crosby Valve LLC ("Crosby Valve") (D.I. 108), FMC Corporation ("FMC")[2] (D.I. 116), Gardner Denver, Inc. ("Gardner Denver") (D.I. 111), Gould Electronics Inc. ("Gould Electronics") (D.I. 122), Pfizer, Inc. ("Pfizer") (D.I. 118), Siemens Industry, Inc. ("Siemens")[3] (D.I. 103), Union Carbide Corporation ("Union Carbide") (D.I. 113), and Warren Pumps, LLC ("Warren Pumps") (D.I. 128) (collectively, "defendants"). Plaintiffs, Kent E. Mosher ("Mr. Mosher") and Cathy Mosher ("Mrs. Mosher") (collectively, "plaintiffs"), did not respond to

---

[1] ABB is the successor to ITE Circuit Breakers, Inc. (D.I. 121 at 1)
[2] FMC was sued on behalf of its former Northern Pump and Chicago Pump businesses. (D.I. 117 at 1)
[3] Siemens is the successor-in-interest to Siemens Energy & Automation, Inc. (D.I. 104 at 1)

these motions. As indicated in the chart *infra* and for the reasons that follow, the court recommends GRANTING each defendant's motion for summary judgment.[4]

| Defendant | Motion for Summary Judgment |
|---|---|
| ABB, Inc. | GRANT |
| Aurora Pump Company | GRANT |
| Crosby Valve LLC | GRANT |
| FMC Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| Gould Electronics Inc. | GRANT |
| Pfizer, Inc. | GRANT |
| Siemens Industry, Inc. | GRANT |
| Union Carbide Corporation | GRANT |
| Warren Pumps, LLC | GRANT |

## II. BACKGROUND

### a. Procedural History

On January 25, 2018, plaintiffs originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Mosher's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On March 16, 2018, the case was removed to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the Federal Officer Removal Statute,[5] and 1446. (D.I. 1) On May 14, 2018, plaintiffs filed an amended complaint (the "First Amended Complaint"). (D.I. 51) ABB, Aurora Pump, Crosby Valve, FMC, Gardner

---

[4] Defendants' opening briefs in support of their respective motions for summary judgment are as follows: ABB (D.I. 121), Aurora Pump (D.I. 107), Crosby Valve (D.I. 109), FMC (D.I. 117), Gardner Denver (D.I. 112), Gould Electronics (D.I. 123), Pfizer (D.I. 119), Siemens (D.I. 104), Union Carbide (D.I. 114), and Warren Pumps (D.I. 129).

[5] The Federal Officer Removal Statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

Denver, Gould Electronics, Pfizer, Siemens, Union Carbide, and Warren Pumps filed motions for summary judgment, individually. (D.I. 120; D.I. 106; D.I. 108; D.I. 116; D.I. 111; D.I. 122; D.I. 118; D.I. 103; D.I. 113; D.I. 128) Plaintiffs did not respond to these motions.[6]

**b. Facts**

### i. Mr. Mosher's alleged exposure history

Plaintiffs allege that Mr. Mosher developed mesothelioma as a result of exposure to asbestos-containing materials during his service as a boiler technician in the United States Navy and his career at the Henderson Mine in Denver, Colorado. (D.I. 51 at ¶¶ 3, 13) Plaintiffs contend that Mr. Mosher was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, or installed. (*Id.* at ¶ 9) Accordingly, plaintiffs assert claims for negligence, strict liability, loss of consortium, and punitive damages. (*Id.* at ¶¶ 14-32)

Mr. Mosher was deposed on April 17 and 18, 2018. (D.I. 19; D.I. 104 at 2) Plaintiff did not produce any other fact or product identification witnesses for deposition.

Mr. Mosher was in boot camp in San Diego for seven weeks. (D.I. 129, Ex. B at 73:1-6) Following boot camp, Mr. Mosher was stationed on the *USS Truett* in Norfolk, Virginia from 1973 to 1977. (D.I. 129, Ex. A) On the *USS Truett*, he worked as a boiler technician, standing watch and performing maintenance on boilers, pumps, valves, and strainers. (D.I. 51 at ¶ 3; D.I. 114, Ex. B at 12:13-41:8)

Mr. Mosher removed insulation and gaskets when repairing boilers. (D.I. 114, Ex. B at 12:13-20, 13:3-19) He described how he broke open an access panel and seal to perform repairs

---

[6] Aurora Pump (D.I. 131), Crosby Valve (D.I. 132), FMC (D.I. 133), Pfizer (D.I. 134), Union Carbide (D.I. 135), Gould Electronics (D.I. 137), Gardner Denver (D.I. 138), ABB (D.I. 140), and Warren Pumps (D.I. 141) requested that their motions be granted based on no opposition.

3

on the boilers. (*Id.* at 12:13-20) Upon opening the boilers, the gaskets often fell apart and he would scrape the boilers with a wire brush. (*Id.* at 13:12-19) He also mixed a powder with liquid to form a cement-like plaster, which was subsequently applied to the boilers. (*Id.* at 14:5-15) Mr. Mosher testified that removing insulation, removing gaskets, and mixing the plaster produced dust, which he inhaled. (*Id.* at 12:21-13:2, 13:20-25, 14:16-21) Mr. Mosher performed work on boilers monthly while stationed on the *USS Truett*. (*Id.* at 14:1-4)

Mr. Mosher would repair pumps monthly by replacing gaskets and packing. (*Id.* at 16:5-20:18) He described how he would remove all insulation and bolts before removing the gaskets with a scraper or wire brush. (*Id.* at 16:5-15) He used packing pullers and a pick to remove the dry packing in pieces. (*Id.* at 18:23-19:4) After removing the packing, Mr. Mosher cleaned the packing gland with a wire brush. (*Id.* at 19:24-20:5) Mr. Mosher also replaced insulation around pumps by mixing a powder with liquid before applying the solution to pumps. (*Id.* at 39:4-14, 40:5-41:2) He testified that replacing gaskets, packing, and insulation produced dust, which he inhaled. (*Id.* at 16:21-17:16, 18:2-19:23, 39:13-23)

In repairing valves weekly, Mr. Mosher removed gaskets and packing, which produced dust that he inhaled. (*Id.* at 23:24-24:1, 24:17-25:18, 27:8-28:11) He removed bolts before pulling the gaskets out with a pick, scraper, or wire brush. (*Id.* at 24:2-6, 25:1-8) He also removed dry packing using a packing puller or a pick. (*Id.* at 27:8-12, 27:23-28:3)

Mr. Mosher testified that while he did not perform any work on turbines, he was present when others removed gaskets and insulation from the turbines, which was a dusty process. (*Id.* at 34:18-38:25)

After his discharge in August 1977, Mr. Mosher worked at Henderson Mine in Denver, Colorado. (D.I. 51 at ¶ 3; D.I. 114, Ex. B at 42:22-43:1; D.I. 129, Ex. B at 193:10-12) He

4

worked as a miner and production operator until 1979. (D.I. 114, Ex. B at 43:9-12) He received his associates degree in commercial and industrial electricity in 1979, and subsequently worked as an apprentice in the electrical department at Henderson Mine. (D.I. 114, Ex. B at 43:6-13) In the spring of 1979, Mr. Mosher was promoted to a mine electrician, working on control panels, switch gear, and cabling. (*Id.* at 43:9-14; D.I. 114, Ex. C at 195:1-17) He worked at Henderson Mine until it closed in 1983. (D.I. 114, Ex. B at 43:4-5) Mr. Mosher was diagnosed with mesothelioma in December 2017. (D.I. 51 at ¶ 13)

### ii. Plaintiffs' product identification evidence

Mr. Mosher is the sole product identification witness in this case and his deposition occurred on April 17 and 18, 2018. (D.I. 19; D.I. 104 at 2)

#### 1. ABB, Inc.

Mr. Mosher did not identify any asbestos-containing ABB products or exposure to any ABB products.

#### 2. Aurora Pump Company

Mr. Mosher identified Aurora Pump as the manufacturer of Prairie-Masker pumps.[7] (D.I. 107, Ex. D at 157:17-18) Mr. Mosher testified that he worked on an Aurora pump once, when the pump turbine fell off and he had to reattach the pump. (D.I. 107, Ex. B at 226:6-15, 227:4-7) He stated that it took approximately one day to reattach the pump turbine. (*Id.* at 227:20-25) Mr. Mosher admitted that this was the only time that he worked on a Prairie-Masker pump, and the only time that he was present when the Prairie-Masker pump was maintained. (*Id.* at 226:6-24, 231:4-7)

---

[7] Aurora Pump avers that Mr. Mosher mistakenly identified it as the manufacturer of two pumps on the *USS Truett* as part of the Prairie-Masker system on that vessel. (D.I. 107 at 3) Aurora Pump contends that it did not design, manufacture, or sell the Prairie-Masker systems that Mr. Mosher described. (*Id.*; Ex. A)

5

### 3. Crosby Valve LLC

Mr. Mosher identified Crosby Valve as one of several manufacturers of valves he encountered during his career. (D.I. 114, Ex. B at 28:14-16) He recalled that Crosby valves were used to control the flow of hot water and steam. (D.I. 109, Ex. A at 233:17-21) Mr. Mosher could not recount the dimensions, color, model number, material, or location of Crosby valves. (*Id.* at 233:22-234:1, 234:4-11) He could not remember if the valves were welded or flanged in place. (*Id.* at 234:2-3) Mr. Mosher testified that he "gag[ged]" Crosby valves, meaning that he put a clamp on the valves to hold them from operating. (*Id.* at 236:22-237:7) Mr. Mosher gagged valves approximately once every quarter. (*Id.* at 237:13-20) Mr. Mosher stated that he performed no other work on Crosby valves. (*Id.* at 237:21-23) He was present once or twice when a gasket was removed from the flange of a Crosby valve, but was not present when individuals worked on packing on Crosby valves. (*Id.* at 239:10-14, 239:19-21)

### 4. FMC Corporation

Mr. Mosher did not identify any asbestos-containing FMC products or exposure to any FMC products.

### 5. Gardner Denver, Inc.

Mr. Mosher did not identify any asbestos-containing Gardner Denver products or exposure to any Gardner Denver products.

### 6. Gould Electronics Inc.

Mr. Mosher did not identify any asbestos-containing Gould Electronics products or exposure to any Gould Electronics products.

### 7. Pfizer, Inc.

Mr. Mosher did not identify any asbestos-containing Pfizer products or exposure to any Pfizer products.

### 8. Siemens Industry, Inc.

Mr. Mosher did not identify any asbestos-containing Siemens products or exposure to any Siemens products.

### 9. Union Carbide Corporation

Mr. Mosher testified that when he worked at Henderson Mine as an electrician, he was exposed to "Bakelite," a reddish-brown plastic material that was used for insulation from high voltages. (D.I. 114, Ex. B at 43:18-20, 45:4-21) Mr. Mosher stated that he did not know the manufacturer of this plastic material, but referred to it as "Bakelite," which he admitted is a generic term for a hard plastic material. (D.I. 114, Ex. C at 65:17-66:2, 203:16-24)

### 10. Warren Pumps, LLC

Mr. Mosher named Warren Pumps as the manufacturer of the booster pumps on which he performed maintenance.[8] (D.I. 129, Ex. B at 157:12-14) Mr. Mosher testified that he added packing "to one or two of the booster pumps and that was it." (*Id.* at 125:14-19) He also stated that, when working on booster pumps, he broke the casing and worked on impellers once. (*Id.* at 167:10-12)

---

[8] Warren Pumps avers that Mr. Mosher mistakenly identified it as the manufacture of three electric booster pumps aboard the *USS Truett*. (D.I. 129 at 2) Warren Pumps avers that Fairbanks-Morse manufactured the booster pumps aboard the *USS Truett*. (*Id.*; Ex. C)

## III. LEGAL STANDARD

### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2)-(3). A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *See Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Servs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Substantial Factor Causation

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 102) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the

9

product was a substantial factor[9] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[10] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference

---

[9] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[10] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

In *Devries*, the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019). The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995-96.

### c. Colorado Law

A federal court sitting in diversity is "required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990). Consequently, the parties agree that Colorado substantive law applies to all land-based claims. (D.I. 102)

Under Colorado law, a plaintiff must establish that a particular defendant's conduct was a substantial contributing cause of his injury. *See Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106, 1112 (Colo. 1987); *Merkley v. Pittsburgh Corning Corp.*, 910 P.2d 58, 59 (Colo. App. 1995) (affirming summary judgment when plaintiff failed to identify particular asbestos product to which he allegedly was exposed). In *Merkley*, the Colorado Court of Appeals favorably cited

11

the Fourth Circuit's decision *Lohrmann v. Pittsburgh Corning Corp.*, which states that "casual" exposure to a defendant's asbestos-containing product is not enough to prove causation, rather there must be "exposure to a specific product on a regular basis over some extended period of time." *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986).

## IV. DISCUSSION

### a. ABB, Inc.

The court recommends granting ABB's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether an ABB product was a substantial factor in causing Mr. Mosher's injuries. There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by ABB. Mr. Mosher has failed to identify exposure to any ABB product. Therefore, there is no need for the court to address substantial factor causation under Colorado or maritime law. The lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium. Furthermore, there is no evidence in the record of willful and wanton conduct that would permit plaintiffs' claim of punitive damages against ABB to survive summary judgment. Therefore, the court recommends granting ABB's motion for summary judgment.

### b. Aurora Pump Company

The court recommends granting Aurora Pump's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether an Aurora Pump product was a substantial factor in causing Mr. Mosher's injuries. Aurora Pump contends that it did not design, manufacture, or sell the Prairie-Masker pumps that Mr. Mosher has described. (D.I. 107 at 7; Ex. A) Furthermore, Mr. Mosher admitted that he has only performed maintenance on a Prairie-Masker pump once. (D.I. 107, Ex. B at 226:6-24, 231:4-7) Accordingly, the evidence in the

record fails to create a genuine issue of material fact concerning the substantial exposure requirement under maritime law. *See In re Asbestos Litig.*, C.A. No. 15-726-ER-SRF, 2017 WL 3780125, at *9-10 (D. Del. Aug. 31, 2017) (concluding that plaintiff's testimony that he performed maintenance on one pump five times and on other pumps once or twice was insufficient to establish a genuine issue of material fact as to whether defendant's product was a substantial factor in causing plaintiff's injuries). Therefore, the court recommends granting Aurora Pump's motion for summary judgment.

### c. Crosby Valve LLC

The court recommends granting Crosby Valve's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Crosby Valve product was a substantial factor in causing Mr. Mosher's injuries. Crosby Valve argues that its valves had no asbestos-containing components.[11] (D.I. 109 at 7; Ex. B; Ex. C at 78:7-15) Mr. Mosher testified that his exposure to Crosby valves was limited to "gagging" them approximately once per quarter. (D.I. 109, Ex. A at 236:22-237:23) He was present once or twice when other individuals removed gaskets from flanges of Crosby valves, but was not present when packing was removed. (*Id.* at 239:10-14, 239:19-21) Furthermore, Mr. Mosher could not recount the dimensions, color, model number, material, or location of Crosby valves, or whether the valves were welded or flanged. (*Id.* at 233:22-234:1, 234:4-11) Mr. Mosher's deposition testimony fails to create a genuine issue of material fact as to whether Crosby Valve's products were a

---

[11] Defendant sold safety valves to the Navy and manufacturers of boilers. (D.I. 109, Ex. B) The valves were designed to regulate pressure and Crosby Valves contends that they were not designed to be insulated and did not require asbestos to function. (*Id.*) Plaintiffs have not offered any evidence to create a material dispute of fact as to whether Crosby valves contained asbestos.

substantial factor in causing his injuries, as required under maritime law. As such, the court recommends granting Crosby Valve's motion for summary judgment.

### d. FMC Corporation

The court recommends granting FMC's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a FMC product was a substantial factor in causing Mr. Mosher's injuries. There is no evidence of plaintiff's identification of any product manufactured, distributed or supplied by FMC. Mr. Mosher has failed to identify exposure to any FMC product. Therefore, there is no need for the court to address substantial factor causation under Colorado or maritime law. The lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium. Furthermore, there is no evidence in the record of willful and wanton conduct that would permit plaintiffs' claim of punitive damages against FMC to survive summary judgment. Therefore, the court recommends granting FMC's motion for summary judgment.

### e. Gardner Denver, Inc.

The court recommends granting Gardner Denver's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Gardner Denver product was a substantial factor in causing Mr. Mosher's injuries. There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Gardner Denver. Mr. Mosher has failed to identify exposure to any Gardner Denver product. Therefore, there is no need for the court to address substantial factor causation under Colorado or maritime law. The lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium. Furthermore, there is no evidence in the record of willful and wanton conduct that would permit plaintiffs' claim of punitive damages against Gardner Denver to

survive summary judgment. Therefore, the court recommends granting Gardner Denver's motion for summary judgment.

### f. Gould Electronics Inc.

The court recommends granting Gould Electronics' motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Gould Electronics product was a substantial factor in causing Mr. Mosher's injuries. There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Gould Electronics. Mr. Mosher has failed to identify exposure to any Gould Electronics product. Therefore, there is no need for the court to address substantial factor causation under Colorado or maritime law. The lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium. Furthermore, there is no evidence in the record of willful and wanton conduct that would permit plaintiffs' claim of punitive damages against Gould Electronics to survive summary judgment. Therefore, the court recommends granting Gould Electronics' motion for summary judgment.

### g. Pfizer, Inc.

The court recommends granting Pfizer's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Pfizer product was a substantial factor in causing Mr. Mosher's injuries. There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Pfizer. Mr. Mosher has failed to identify exposure to any Pfizer product. Therefore, there is no need for the court to address substantial factor causation under Colorado or maritime law. The lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium. Furthermore, there is no evidence in the record of willful and wanton conduct that would permit plaintiffs' claim of

punitive damages against Pfizer to survive summary judgment. Therefore, the court recommends granting Pfizer's motion for summary judgment.

### h. Siemens Industry, Inc.

The court recommends granting Siemens' motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Siemens product was a substantial factor in causing Mr. Mosher's injuries. There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Siemens. Mr. Mosher has failed to identify exposure to any Siemens product. Therefore, there is no need for the court to address substantial factor causation under Colorado or maritime law. The lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium. Furthermore, there is no evidence in the record of willful and wanton conduct that would permit plaintiffs' claim of punitive damages against Siemens to survive summary judgment. Therefore, the court recommends granting Siemens' motion for summary judgment.

### i. Union Carbide Corporation

The court recommends granting Union Carbide's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Union Carbide product was a substantial contributing cause of Mr. Mosher's injuries. Mr. Mosher testified that, while working as an electrician at Henderson Mine, he was exposed to "Bakelite." (D.I. 114, Ex. B at 43:18-20, 45:4-21) Union Carbide was a manufacturer of phenolic reisins[12] sold under the tradename "Bakelite." (D.I. 114, Ex. D) Union Carbide's phenolic reisins did not contain asbestos. (*Id.*) Union Carbide also manufactured a phenolic molding compound sold under the

---

[12] A phenolic reisin is made by reacting phenol with formaldehyde, and is used for molding and laminating parts for use in electrical equipment. *See Phenol-formaldehyde resin*, ENCYLCOPAEDIA BRITANNICA, https://www.britannica.com/science/phenol-formaldehyde-resin (last visited Nov. 19, 2019).

16

same trade name. (*Id.*) Some of these phenolic molding compounds contained asbestos, though Union Carbide ceased the manufacture and sale of asbestos-containing phenolic molding compounds by 1974. (*Id.*) Mr. Mosher admitted that he used "Bakelite" as a generic term for a hard plastic material, and that he did not know the name of that material's manufacturer. (D.I. 114, Ex. C at 65:11-66:2, 203:16-24) Plaintiffs have not provided any evidence that creates a genuine issue of material fact as to whether plaintiff worked specifically with any Union Carbide product containing asbestos and that such exposure was a substantial contributing cause of Mr. Mosher's injuries, as required under Colorado law. Therefore, the court recommends granting Union Carbide's motion for summary judgment.

### j. Warren Pumps, LLC

The court recommends granting Warren Pumps' motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Warren Pumps product was a substantial factor in causing Mr. Mosher's injuries. Mr. Mosher identified Warren Pumps as the manufacturer of the booster pumps on which he performed maintenance. (D.I. 129, Ex. B at 157:12-14) Warren Pumps argues that Naval archive records show that booster pumps onboard the *USS Truett* during the relevant time period were manufactured by Fairbanks-Morse, not Warren Pumps. (D.I. 129 at 3-4; Ex. C) Furthermore, Mr. Mosher testified that, in working on the booster pumps, he mainly packed glands. (D.I. 129, Ex. B at 167:10-11) He stated that, when he worked on booster pumps, he broke the casing in half and worked on impellers once. (*Id.* at 167:10-12) When asked if he had to change any packing, Mr. Mosher stated, "I think we added packing . . . to one or two of the booster pumps and that was it." (*Id.* at 125:14-19) Consequently, there is insufficient evidence to find that the substantial factor test required under

maritime law has been met, and the court recommends granting Warren Pump's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| ABB, Inc. | GRANT |
| Aurora Pump Company | GRANT |
| Crosby Valve LLC | GRANT |
| FMC Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| Gould Electronics Inc. | GRANT |
| Pfizer, Inc. | GRANT |
| Siemens Industry, Inc. | GRANT |
| Union Carbide Corporation | GRANT |
| Warren Pumps, LLC | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 19, 2019

                                                Sherry R. Fallon
                                                United States Magistrate Judge