# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

<u>IN RE: ASBESTOS LITIGATION</u>       )
                                       )
KENT E. MOSHER and                     )
CATHY MOSHER,                          )
                                       )
             Plaintiffs,               )
                                       )   Civil Action No. 18-410-LPS-SRF
    v.                                 )
                                       )
ABB, INC., et al.,                     )
                                       )
             Defendants.               )

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Air & Liquid Systems Corporation ("Air & Liquid").[1] (D.I. 124) For the following reasons, I recommend GRANTING defendant's motion for summary judgment.[2]

## II. BACKGROUND

### a. Procedural History

On January 25, 2018, plaintiffs Kent E. Mosher ("Mr. Mosher") and Cathy Mosher ("Mrs. Mosher") (collectively, "plaintiffs") originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Mosher's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On March 16, 2018, the case was

---

[1] Air & Liquid is the successor-by-merger to Buffalo Pumps, Inc. ("Buffalo Pumps"). (D.I. 125 at 1) Plaintiffs refer to "Buffalo" as the brand of fire pump at issue in the instant motion so the court will adopt the reference for purposes of this Report and Recommendation.
[2] The briefing for the pending motion is as follows: defendant's opening brief (D.I. 125), plaintiffs' answering brief (D.I. 130), and defendant's reply brief (D.I. 139).

removed to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the Federal Officer Removal Statute,[3] and 1446. (D.I. 1) On May 14, 2018, plaintiffs filed an amended complaint (the "First Amended Complaint"). (D.I. 51) On July 24, 2019, Air & Liquid filed the present motion for summary judgment. (D.I. 124)

**b. Facts**

Plaintiffs allege that Mr. Mosher developed mesothelioma as a result of exposure to asbestos-containing materials during his service as a boiler technician in the United States Navy and his career at the Henderson Mine. (D.I. 51 at ¶¶ 3, 13) Plaintiffs contend that Mr. Mosher was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, or installed. (*Id.* at ¶ 9) Accordingly, plaintiffs assert claims for negligence, strict liability, loss of consortium, and punitive damages. (*Id.* at ¶¶ 14-32)

Mr. Mosher was deposed on April 17 and 18, 2018. (D.I. 19; D.I. 125 at 1) Plaintiffs did not produce any other fact or product identification witnesses for deposition.

Mr. Mosher joined the United States Navy in August 1973. (D.I. 125, Ex. A at 10:5-6) In the spring of 1974, he was assigned to the *USS Truett*, a destroyer escort. (*Id.* at 10:15-18, 11:2-4) He served as a boiler technician in the fire room, standing watch and performing maintenance on boilers, pumps, valves, and strainers. (*Id.* at 11:15-12:2) In repairing pumps, Mr. Mosher replaced gaskets and packing. (*Id.* at 18:1-20:18) He described, generally, how he would remove all insulation and casing gasket bolts before removing the gaskets with a scraper or wire brush. (D.I. 130, Ex. A at 16:5-15) He used packing pullers and a pick to remove the

---

[3] The Federal Officer Removal Statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

2

dry packing in pieces. (*Id.* at 18:23-19:4) After removing the packing, Mr. Mosher cleaned the packing gland with a wire brush. (*Id.* at 19:24-20:5) He testified that replacing gaskets and packing produced dust, which he inhaled. (D.I. 125, Ex. A at 18:2-7, 20:6-16)

Mr. Mosher stated that he performed maintenance on a fire pump and identified Buffalo as the manufacturer of this pump. (D.I. 125, Ex. B at 157:21-158:9) He described how he was able to identify a Buffalo pump because of the pump's casing nameplate and information. (D.I. 125, Ex. A at 21:11-14) He stated that there was only one fire pump aboard the *USS Truett*, which supplied water for fire suppression systems. (D.I. 125, Ex. B at 157:24-158:1, 243:10-15) He was unsure whether the fire pump used mechanical seals, but stated that he did not need to repack the pump. (*Id.* at 244:1-17) Therefore, his work was limited to turning the pump's electric motor on and off, and he did not have to open the fire pump. (*Id.* at 244:18-245:9) He did not observe others perform work on the Buffalo fire pump. (*Id.* at 244:20-21)

Mr. Mosher was honorably discharged in August 1977. (D.I. 125, Ex. A at 10:7-10) He thereafter pursued civilian employment at Henderson Mine. (D.I. 130, Ex. A at 43:9-17) He was diagnosed with mesothelioma in December 2017. (D.I. 51 at ¶ 13)

### III. LEGAL STANDARD

#### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v.*

3

*Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)-(3).

**b. Maritime Law: Substantial Factor Causation**

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 102) In order to establish causation in a claim for asbestos-related personal injuries under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[4] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to

---

[4] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

5

the defendant's product for some length of time."[5] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

In *Devries*, the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019). The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995-96.

---

[5] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

6

## IV. DISCUSSION

### a. Applicable Standard

As a preliminary matter, plaintiffs assert that the standard articulated by the Supreme Court in *Devries* applies to defendant's motion for summary judgment and, under this standard, the motion for summary judgment should be denied. (D.I. 130 at 10-12) However, the bare-metal defense is not in issue here because Air & Liquid argues the lack of substantial factor causation under *Lindstrom*, i.e., the lack of sufficient product exposure and no nexus to causation of the alleged injuries. (D.I. 125 at 4-8)

Plaintiffs also argue that defendant is impermissibly attempting to prematurely shift the burden on summary judgment to plaintiffs and cite *In re Asbestos Litig (Harding)*, C.A. No. 17-251-MN-SRF, 2019 WL 578282, at *5 (D. Del. Jan. 22, 2019). (D.I. 130 at 8-9 & n. 43) In *Harding*, defendant argued that its motion for summary judgment should be granted because plaintiffs did not provide evidence that the products in issue contained asbestos. *Harding*, 2019 WL 578282, at *5. This case differs from *Harding* in that Air & Liquid is arguing that there is no genuine issue of material fact that the substantial factor causation test cannot be met based upon the evidence in the record. Therefore, the court recommends rejecting plaintiffs' argument on this point.

### b. Product Exposure and Causation

Air & Liquid argues that plaintiffs cannot show that Air & Liquid's products were a substantial factor in causing Mr. Mosher's injury as required under maritime law because plaintiffs have not identified instances of exposure to a Buffalo pump equipped with asbestos-containing components. (D.I. 125 at 5) Furthermore, Air & Liquid contends that plaintiffs fail to offer evidence of asbestos exposure to support an inference of substantial factor causation that

7

would amount to anything more than conjecture. (*Id.*) Mr. Mosher identified Buffalo Pumps as the manufacturer of the fire pump on which he performed maintenance. (D.I. 125, Ex. A at 20:19-22; Ex. B at 157:21-158:9) Mr. Mosher testified about his work on pumps generally, and specifically about his work on the fire pump. (D.I. 125, Ex. A at 18:2-18; Ex. B at 243:7-245:12) He admitted that his work on the fire pump was limited to turning its electric motor on and off, and that he was not present when other individuals performed other work on this pump. (D.I. 125, Ex. B at 244:18-245:9) Mr. Mosher testified that the Buffalo fire pump supplied water for the fire suppression system and there was no reason to heat the water. (*Id.* at 243:10-15) He could not recall whether the Buffalo fire pump used mechanical seals and packing, but testified that he did not repack the Buffalo fire pump. (*Id.* at 244:1-17)

Plaintiffs counter that Mr. Mosher was able to identify and describe the products he worked with in detail. (D.I. 130 at 12) Plaintiffs argue that their medical expert, Dr. Mark Ginsburg ("Dr. Ginsburg"), has opined that Mr. Mosher was exposed to asbestos and that this asbestos exposure caused his mesothelioma. (*Id.*) Plaintiffs contend that Buffalo Pumps' manuals for other types of pumps and other Naval documents illustrate that Buffalo pumps required asbestos packing. (*Id.* at 3-6)

Although Mr. Mosher identified Buffalo pumps and described the pumps on which he performed maintenance, Mr. Mosher's testimony does not establish the "frequency, regularity, or proximity" of his work on Buffalo pumps to create a genuine issue of material fact regarding substantial factor causation. *See Thomasson v. Air & Liquid Systems Corp.*, 2015 WL 1639730, at *4 (D.N.J. Apr. 9, 2015). Mr. Mosher testified as to his work on pumps generally, but admitted that his exposure to Buffalo pumps was limited to turning the electric motor of the fire pump on and off, which did not require him to open the pump. (D.I. 125, Ex. B at 244:18-245:9)

8

He was not present when other individuals performed work on the fire pump. (*Id.* at 244:20-21) Such "minimal exposure" to defendant's product is insufficient to provide a basis for the inference that Buffalo Pumps' product was a substantial factor in causing Mr. Mosher's injury. *See Lindstrom*, 424 F.3d at 492. Plaintiffs cite to correspondence between the Navy Department and Buffalo Pumps to illustrate that Buffalo supplied fire pumps to the Navy. (D.I. 130 at 4; Ex. D) However, the presence of a single Buffalo pump aboard the *USS Truett* is insufficient to establish causation. *See Lindstrom*, 424 F.3d at 492.

Furthermore, Dr. Ginsburg's written report provides a general opinion that "Mr. Mosher's cumulative exposure to asbestos was a substantial contributing cause of his malignant mesothelioma." (D.I. 130, Ex. K) Dr. Ginsburg's report does not create a genuine issue of material fact as to whether Mr. Mosher's exposure to a particular product, such as a Buffalo Pump was a substantial factor in causing Mr. Mosher's injury.

Plaintiffs identify Buffalo Pumps' manuals referring to distiller distillate pumps and centrifugal pumps, which plaintiffs admit are different types of pumps than the fire pump that Mr. Mosher recalls aboard the *USS Truett*. (D.I. 130 at 4-5; Ex. E; Ex. F) Plaintiffs suggest that these other pumps are similar to the fire pump[6] in issue and, therefore, all Buffalo pumps required asbestos packing.[7] (D.I. 130 at 3-6) However, Mr. Mosher testified that he did not need to repack the fire pump. (D.I. 125, Ex. B at 244:1-17) Furthermore, Mr. Mosher's work on the fire pump was limited to turning the pump's motor on and off, and he was not required to open it

---

[6] The fire pump supplied water for the *USS Truett*'s fire suppression system and did not need to heat the water it supplied. (D.I. 125, Ex. B at 243:10-15) Mr. Mosher could not recall whether the fire pump used a mechanical seal or a packing gland. (*Id.* at 244:1-17)

[7] Plaintiffs also cite defendant's responses to plaintiffs' interrogatories to suggest that all Buffalo pumps contained asbestos. (D.I. 130 at 3 n.15) However, defendant responded that some, but not all, Buffalo pumps were delivered with asbestos-containing packing and gaskets. (D.I. 130, Ex. C at 5-6)

9

to complete this work. (*Id.* at 244:18-245:9) Similarly, even assuming the authenticity of the Naval documents produced by the plaintiffs, such documents were written outside of the relevant time period. The Naval Machinery manual from the United States Naval Institute was published in 1941 and the Bureau of Ships manual was published in 1954, both of which predate Mr. Mosher's service as a boiler technician. (D.I. 130, Ex. G; Ex. H) Mr. Mosher was among the first group of sailors aboard the *USS Truett* for its maiden voyage. (D.I. 130, Ex. A at 11:5-12) As such, all of the equipment aboard the *USS Truett* was new. (*Id.* at 11:5-14)

Plaintiffs' evidence fails to create a genuine issue of material fact as to whether Air & Liquid's products were a substantial factor in causing Mr. Mosher's injuries. *See Lindstrom*, 424 F.3d at 492; *Damon v. Aireon Manuf. Corp.*, 2015 WL 9461593, at *1 n.1 (E.D. Pa. Sept. 1, 2015); *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439127, at *1 n.1 (E.D. Pa. Feb. 28, 2011) (granting motion for summary judgment when plaintiff could not definitively testify that he worked on a Buffalo pump on even one occasion). Therefore, the court recommends granting Air & Liquid's motion for summary judgment.

### c. Punitive Damages

The recommendation for granting defendant's motion for summary judgment for the reasons stated in section (IV)(b) *supra* eliminates the need to consider punitive damages.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendant's motion for summary judgment. (C.A. No. 18-410, D.I. 124)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 20, 2019

Sherry R. Fallon
United States Magistrate Judge